| | |
|---|---|
| CALVIN LYNDELL DIBRELL, ) | |
| ) | 3:22-CV-207 |
| Plaintiff, ) | |
| ) | Judge Curtis L. Collier |
| v. ) | |
| ) | Magistrate Judge McCook |
| CITY OF KNOXVILLE, ) | |
| ) | |
| Defendant. ) | |

# **M E M O R A N D U M**

Before the Court is a motion by Defendant, the City of Knoxville (the "City"), to dismiss the complaint of Plaintiff, Calvin Lyndell Dibrell, under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 17.) Plaintiff responded in opposition (Doc. 20), and Defendant replied (Doc. 21).

For the reasons set out below, the Court will **GRANT IN PART** and **DENY IN PART** Defendant's motion to dismiss.

## **I. BACKGROUND**[1]

On September 20, 2018, Plaintiff filed a complaint in this Court against Defendant and eight named Knoxville Police Officers (the "Named Officers") in their individual and official capacities (the "First Case"). (Doc. 1 in Case No. 3:18-cv-397-HSM-HBG.) Plaintiff invoked 42 U.S.C. § 1983, 42 U.S.C. § 1985, and the Tennessee Human Rights Act (the "THRA"), Tenn. Code Ann. §§ 4-21-401 *et seq.*, as the legal basis for his First Complaint. (*Id.* ¶¶ 1–2.) He asserted

---

[1] This summary of the facts accepts all the factual allegations in Plaintiff's complaint as true, *see Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).

claims for "fraudulent misrepresentation, negligence, false arrest, false imprisonment, and malicious prosecution, negligent infliction of emotional distress[,] and intentional infliction of emotional distress." (*Id.* ¶ 3; *see also id.* ¶¶ 82–101.)

Factually, the First Case was based on Plaintiff's allegations that the Named Officers and other agents had conducted traffic stops, detained, or arrested Plaintiff more than forty times within a short period of time based on racial and personal animus; that they had fabricated or altered evidence against him; and that they had given false testimony against him. (*See, e.g.*, *id.* ¶¶ 18–19, 22, 56–62.) The complaint in the First Case did not identify the dates between which the forty wrongful interventions occurred. (*See id.*) It did, however, allege "[t]hat the Defendants' conduct in harassing, intimidating and terrorizing Plaintiff continues unto this day," namely the filing date of September 20, 2018. (*Id.* ¶ 21.) It also alleged dates or timeframes for two specific incidents or sets of incidents. First, it alleged false arrests of Plaintiff based on fabricated or altered evidence in 2012 and 2013. (*Id.* ¶ 22.) Second, it alleged an unlawful search and arrest by the Named Officers on February 17, 2014, leading to a wrongful conviction which was later reversed by the Tennessee Court of Criminal Appeals. (*Id.* ¶¶ 24–43.)

This Court granted summary judgment to Defendant and the Named Officers in the First Case on April 22, 2020. (Doc. 100 in Case No. 3:18-cv-397-HSM-HBG.) The Court dismissed the federal claims with prejudice and declined to continue exercising supplemental jurisdiction over the state-law claims, dismissing them without prejudice. (*Id.*) The Court of Appeals for the Sixth Circuit affirmed the judgment on January 8, 2021. *Dibrell v. City of Knoxville*, 984 F.3d 1156 (6th Cir. 2021).

Plaintiff filed his current action in this Court on June 7, 2022 (the "New Case").² (Doc. 1.) Defendant is the sole defendant named in the New Case.³ (*See id.* at 1 and ¶ 6.) As in the First Case, the New Case invokes 42 U.S.C. §§ 1983 and 1985 and the THRA as a legal basis. (*See* Doc. 1 ¶ 2.) Also as in the First Case, the complaint in the New Case recites that it asserts claims for "fraudulent misrepresentation, negligence, false arrest, false imprisonment, and malicious prosecution, negligent infliction of emotional distress[,] and intentional infliction of emotional distress." (*Id.* ¶ 3.) After the jurisdictional allegations and identification of the parties, the complaint in the New Case may be broken down into two sections: those paragraphs that are largely duplicative of the First Case and those that contain new allegations.

The factual allegations in paragraphs 8 through 92 of the complaint in the New Case are substantially identical to the allegations of the complaint in the First Case. (*Compare* Doc. 1 ¶¶ 8–92 *with* Doc. 1 ¶¶ 15–101 in Case No. 3:18-cv-397-HSM-HBG.) The only new allegations in this section of the complaint are "[t]hat Plaintiff was treated negatively, and violently by Defendants because of his race" and "[t]hat Defendants are all aware of the history that Plaintiff has with Defendants." (*See* Doc. 1 ¶¶ 59, 63.) Plaintiff has, however, omitted from the complaint in the New Case the headings he used in the First Case to identify the specific causes of action he asserted in the various paragraphs.

---

² Meanwhile, after the Court of Appeals affirmed the judgment in the First Case and before Plaintiff filed the New Case in federal court, Plaintiff filed a complaint in the Circuit Court for Knox County, Tennessee, based on the same conduct addressed in the New Case (the "State Case"). (Doc. 1 ¶ 4.) Plaintiff explains that he filed the New Case in this Court "to seek recovery of any claims not recoverable under" the State Case. (*Id.*)

³ The caption also includes "Officers to be named, in their Individual Capacity and Official Capacity," as defendants. (Doc. 1 at 1.) No other defendants have yet been named.

Paragraphs 93 through 122 of the complaint in the New Case contain three new sets of allegations. (*Compare* Doc. 1 ¶¶ 93–122 *with* Doc. 1 in Case No. 3:18-cv-397-HSM-HBG.) First, Plaintiff alleges he was falsely accused of rape by a white female Assistant District Attorney in 2006, for which certain of the Named Officers and others threatened him with death during an arrest on false allegations and violated his right to a trial and to bond. (Doc. 1 ¶¶ 93–105.) Second, Plaintiff alleges "Defendants" have tried to discourage him from suing them by refusing to give him help from the Knoxville Police Department, specifically by not prosecuting a third party against whom Plaintiff presented evidence of bank fraud and by threatening to kill Plaintiff in response. (*Id.* ¶¶ 106–14.) Third, Plaintiff alleges he was falsely and maliciously prosecuted in Knox County Criminal Court for Aggravated Assault, Domestic Violence, and Unlawful Possession of a Weapon in Case No. 116531 and for Introducing Contraband into a Penal Facility in Case No. 116509 (the "Knox Criminal Cases"), both of which were dismissed on June 8, 2022.[4] (*Id.* ¶¶ 115–22.)

Defendant moved to dismiss the New Case on November 30, 2022. (Doc. 17.) Plaintiff responded in opposition on December 28, 2022 (Doc. 20),[5] and Defendant replied on January 3, 2023 (Doc. 21).

---

[4] Plaintiff's complaint was filed on June 7, 2022, the day before the alleged dismissal of the charges in the Knox County Criminal Cases. (*See* Doc. 1.) There thus appears to be a typographical error as to the date of dismissal.

[5] Plaintiff's response was due on December 21, 2022, twenty-one days after the motion to dismiss was filed. *See* E.D. Tenn. L.R. 7.1(a)(2). Defendant does not object to the lateness of Plaintiff's response. (*See* Doc. 21.)

## II. STANDARD OF REVIEW

A defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss under Rule 12(b)(6), a court must accept all the factual allegations in the complaint as true and construe the complaint in the light most favorable to the plaintiff. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (quoting *Hill v. Blue Cross & Blue Shield of Mich.*, 49 F.3d 710, 716 (6th Cir. 2005)). The court is not, however, bound to accept bare assertions of legal conclusions as true. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

In deciding a motion under Rule 12(b)(6), a court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)), this statement must nevertheless contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Id.* at 679 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

## III.     DISCUSSION

In the New Case, Plaintiff raises numerous theories on which his lawsuit should proceed. However, many of these theories are bare-bones assertions of law or recitations of claims raised in the First Case. Defendant asserts that nearly all of Plaintiff's claims should be dismissed.

### A.     Res Judicata

Defendant moves to dismiss all of Plaintiff's "federal claims arising from the allegations set forth in the first 92 paragraphs of the Complaint" on the grounds of res judicata. (Doc. 18 at 7.) Under the doctrine of res judicata, "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Bragg v. Flint Bd. of Educ.*, 570 F.3d 775, 776 (6th Cir. 2009) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)). The elements of res judicata are:

> (1) a final decision on the merits by a court of competent jurisdiction;
> (2) a subsequent action between the same parties or their "privies";
> (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and
> (4) an identity of the causes of action.

*Id.* (quoting *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 880 (6th Cir. 1997)). The party asserting res judicata—here, Defendant—bears the burden of proof. *Browning v. Levy*, 283 F.3d 761, 772 (6th Cir. 2002).

Defendant argues each of the elements of res judicata are satisfied as to Plaintiff's federal claims based on the allegations in the first ninety-two paragraphs of the complaint. (Doc. 18 at 6–7.) Plaintiff does not contest any specific element of res judicata with respect to his federal claims. Rather, he argues res judicata does not apply at all because the "new conduct" he has alleged, "when taken in totality, would revive the prior conduct and make it a new cause of action which

6

encompasses both the new and prior conduct together as one cause of action." (Doc. 20 at 2.) Plaintiff does not cite any authority for this proposition. The Court is not aware of any such blanket exception to the doctrine of res judicata. On the contrary, "[t]here is simply 'no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of *res judicata*.'" *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 400 (1981) (quoting *Heiser v. Woodruff*, 327 U.S. 726, 733 (1946)), *limited on other grounds by Rivet v. Regions Bank of La.*, 522 U.S. 470, 477–78 (1998). Lacking authority to do otherwise, the Court will apply the elements of res judicata to the federal claims in the New Case to determine if those claims are barred.

Each of the elements of res judicata are satisfied as to the § 1983 and § 1985 claims Plaintiff asserted in the First Case and reasserts in the New Case. First, the judgment in the First Case was a final decision on the merits of these claims by a court of competent jurisdiction. Second, Plaintiff and Defendant were both parties to the first action. Third, the factual and legal issues set out in paragraphs 8 through 92 of the complaint in the New Case are substantially identical to those in the First Case, and those issues were therefore litigated in the First Case. Fourth, Plaintiff asserts the same causes of action in the First Case and the New Case. Res judicata therefore bars all of Plaintiff's federal claims in the New Case that are based on the allegations in Paragraphs 8 through 92 of the complaint. Plaintiff's §1983 and §1985 claims set out in paragraphs 8 through 92 will be **DISMISSED WITH PREJUDICE.**

### B. Statutes of Limitations

Defendant next argues that the respective statutes of limitations bar all of the claims based on the new allegations in Plaintiff's complaint, those in paragraphs 93 through 122. (Doc. 1 at 8–10.) Defendant asserts that one-year statutes of limitations apply to all these claims, whether under

federal law, the THRA, or the Tennessee Governmental Tort Liability Act (the "GTLA"), Tenn. Code Ann. §§ 29-20-101 *et seq.* (Doc. 18 at 8–9.)

Plaintiff does not dispute that a one-year statute of limitations applies to each of his claims. (*See* Doc. 20 at 2.) Instead, he argues the doctrine of continuing violations allows him "to bring a claim for discriminatory conduct outside of the statute of limitations period if the discriminatory conduct is sufficiently related to the conduct occurring within the limitations period." (*Id.*) He relies on *Booker v. The Boeing Co.*, 188 S.W.3d 639, 643 (Tenn. 2006), as authority. (*Id.*) Plaintiff also argues the complaint shows a pattern of misconduct as to which the specific allegations are examples. (*Id.*) In reply, Defendant argues that the continuing-violation doctrine applies "only to employment discrimination claims under the" THRA, and not to Plaintiff's non-employment THRA claims for malicious harassment. (Doc. 21 at 1.) Defendant therefore contends that *Booker*, as an employment-discrimination case, is irrelevant to Plaintiff's claims. (*Id.*)

The Court will first determine which of Plaintiff's claims in paragraphs 93 through 122 would be time-barred if not for the continuing-violations doctrine. The Court will then determine whether the timely allegations can save any of the time-barred claims under the continuing-violations doctrine.

Plaintiff makes three sets of allegations in his complaint that are not barred by the doctrine of res judicata. In paragraphs 93 through 105, he alleges he was falsely accused of rape in 2006 and suffered civil rights violations as a result. In paragraphs 106 through 114, he alleges a failure to prosecute bank fraud against a third party as to whom he had given police detailed information in 2019, leading to a death threat against Plaintiff. In paragraphs 115 through 122, he alleges he was maliciously prosecuted in the Knox Criminal Cases.

Defendant specifically addresses the first two of these sets of allegations, the false rape accusation and the failure to bring bank-fraud charges, arguing they are time barred. (Doc. 18 at 9–10.) Because these claims arise from events in 2006 and 2019, respectively, and Plaintiff's complaint was not filed until multiple years later, in June of 2022, the Court agrees these claims are barred by their respective one-year statutes of limitations if not saved by the continuing-violations doctrine.

Defendant does not specifically address how the statutes of limitations would apply to Plaintiff's claims based on the Knox Criminal Cases. (*See id.* at 8–10.) The only date Plaintiff alleges as to the Knox Criminal Cases is the date on which the charges were dismissed, June 8, 2022. (Doc. 1 ¶ 120.) This date appears to contain a typographical error, as the document alleging it as an accomplished fact was filed the day before, on June 7, 2022. Nevertheless, the burden is on Defendant to prove its statute-of-limitations defense, *see Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013), and Defendant has not done so as to these claims; nothing on the face of the complaint shows that the Knox Criminal Cases were initiated more than a year before Plaintiff filed his complaint on June 7, 2022. Therefore, for purposes of the motion to dismiss, the Court will consider the claims based on the Knox Criminal Cases as having been timely filed.

The Court therefore turns next to Plaintiff's reliance on the continuing-violations doctrine. Plaintiff argues as follows: "the continuing violations doctrine would allow Plaintiff to bring a claim for discriminatory conduct outside of the statute of limitations period if the discriminatory conduct is sufficiently related to the conduct occurring within the limitations period. *Booker v. The Boeing Co.*, 188 S.W.3d 639, 643 (Tenn. 2006)." (Doc. 20 at 2.) Defendant replies that the

continuing-violations doctrine is "applicable only to employment discrimination claims under the" THRA, and *Booker* is inapplicable to Plaintiff's malicious harassment claims under the THRA. (Doc. 21 at 1.)

In *Booker*, the Tennessee Supreme Court outlined the categories of actions that may give rise to a continuing violation. "The first category arises where there is some evidence of present discriminatory activity giving rise to a claim of a continuing violation . . . . Key to establishing this exception is proof that at least one of the forbidden discriminatory acts occurred within the relevant limitations period." *Booker*, 188 S.W.3d at 643. "The second category of 'continuing violation' arises where there has been a longstanding and demonstrable policy of discrimination . . . . To constitute an established pattern, the plaintiff must clearly demonstrate some 'overarching policy of discrimination,' and not merely the occurrence of an isolated incident of discriminatory conduct." *Id.*

Accordingly, *Booker* would not provide plaintiff with support for his relief simply because conduct is "sufficiently related." However, *Booker* also does not state that claims for relief are limited solely to claims for employment discrimination. While it is true that "[t]he continuing violations doctrine was developed by federal courts interpreting federal anti-discrimination statutes, particularly Title VII of the Civil Rights Act of 1964 . . .", the Court of Appeals for the Sixth Circuit "nonetheless [has] applied the continuing-violations doctrine to claims for deprivations of civil rights." (*Id.* at 643; *Nat'l Parks Conservation Ass'n, Inc. v. Tenn. Valley Auth.*, 480 F.3d 410, 416 (6th Cir. 2007)).

Under the second continuing-violation theory, Plaintiff essentially argues that the City has been discriminating against and retaliating against him since he was falsely accused of rape in

2006. (Doc. 1 at 15.) Plaintiff raises claims against "Assistant District Attorney Mary Ward" and "Officers Baldwin, Turner, Lang, White, Whitehead, and Jones, as well as others unnamed." (*Id.* ¶¶ 94, 100.) He states these individuals, among other things, had him arrested multiple times, threatened him, discouraged him from pursuing litigation, and refused to criminally prosecute a case he attempted to bring. (*See id.* at 93-122.) Even taking Plaintiff's allegations as true, Plaintiff has not established an "overarching policy of discrimination." At most, Plaintiff has alleged discrete acts that each had an individual statute of limitations. The most recent act alleged within this category is the 2019 decision not to prosecute the case Plaintiff attempted to bring. Assuming this could give rise to a cause of action, this decision still would not help Plaintiff in showing a policy that could prevail under the continuing-violations doctrine.

Plaintiff's claims relating to his prosecution in the Knox Criminal Cases are not barred by the applicable statute of limitations. However, his claims relating to the 2006 rape allegation and 2019 failure to prosecute are barred by the statute of limitations. These claims also may not be revived through the continuing-violation doctrine. Defendant's motion to dismiss Plaintiff's claims as to the 2006 rape allegation and 2019 failure to prosecute is **GRANTED**.

### C. § 1983 Malicious Prosecution

Although Plaintiff's malicious prosecution claim would not be barred by the statute of limitations, this Court must still determine whether he has pleaded enough facts for this claim to survive Defendant's 12(b)(6) motion to dismiss. This means the Court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

> To set forth a cognizable § 1983 claim against a municipality, a plaintiff must allege that (1) agents of the municipality, while acting under color of a state law,

(2) violated the plaintiff's constitutional rights, and (3) that a municipal policy or policy of inaction was the moving force behind the violation.

*Memphis, Tenn. Area Local, Am. Postal Workers Union, AFL-CIO v. City of Memphis*, 361 F.3d 898, 902 (2004). "A municipal 'custom' may be established by proof of the knowledge of policymaking officials and their acquiescence in the established practice." *Id.* at 903.

In *Local American Postal Workers Union*, the Court of Appeals reversed the district court's grant of the defendant's motion to dismiss on the issue of municipal liability. *Id.* at 903. In its complaint, the plaintiff alleged the defendant "conspired with Memphis, through its on-duty and off-duty MPD police officers, to engage in the police misconduct' or 'Memphis, through its on-duty and off-duty police officers, has engaged in a pattern of police misconduct." *Id.* at 902. To show knowledge by policymakers, the complaint alleged Memphis "knew or reasonably should have known that the actions of the on-duty and off-duty MPD police officers were unlawful and in violation of federal laws and the Constitution of the United States." *Id.* The Court of Appeals held that this was enough even though the plaintiff failed to "specifically allege that there was knowledge on the part of 'policymaking officials'" because "a plaintiff need not anticipate every defense and need not plead every response to a potential defense." *Id.* While the complaint did not "state that the unlawful actions were part of an established practice," it alleged the defendants "engaged in a pattern of police misconduct." *Id.* The Court of Appeals also determined the phrase "engaged in a pattern of police misconduct" was sufficient to sustain plaintiff's claim because it referred to a specific event and the court "must construe the complaint in the light most favorable to the plaintiffs." *Id.*

Now, this Court must determine whether Plaintiff has pleaded enough allegations to sustain each element of his claim. There is no dispute over the first two elements. (*See* Doc. 1 at 17; *see*

12

*also* Doc. 18 at 13.) Plaintiff has alleged that agents of a municipality, the officers named in the complaint, potentially violated his rights by prosecuting him without a proper basis. However, the dispute centers around whether Plaintiff has presented evidence of a policy or custom that can be attributed to the city.

Plaintiff has specifically alleged he was falsely prosecuted twice in the Knox County Criminal Court. (Doc 1. at 17.) The first prosecution, he alleges, charged him with Aggravated Assault, Domestic Violence, and Unlawful Possession of a Weapon. (*Id.*) He states, "[t]he charges were known to be false be [sic] Defendants." (*Id.*) As to the second prosecution, Plaintiff alleges he was charged with Introducing Contraband into a Penal Facility. (*Id.*) He alleges Defendant "knew these charges to be false as well, as Defendants arrested Plaintiff in the courthouse, took him into jail, and then charged him with having prescription drugs on his person in the jail, after they took him into the jail with them." (*Id.*)

Viewed in the light most favorable to Plaintiff, these allegations allow the Court to draw multiple inferences. The Court could infer, at a minimum, that officers knew Plaintiff was innocent when they arrested him. While Plaintiff has not outlined every detail of his claims, he has provided enough for the Court to draw more than one inference at this stage. This is all that is required under the *Twombly/Iqbal* standard.[6] (*See Shively v. Loc. Sch. Bd. of Educ.*, 579 Fed. App'x 348, 352 (6th Cir. 2014)) (holding that the district court did not er in determining plaintiffs pleaded enough allegations to comply with Rule 8).

---

[6] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

13

Plaintiff has made sufficient allegations to move forward with his claim for malicious prosecution for the Knox Criminal Cases. Defendant's motion to dismiss Plaintiff's § 1983 claim based on the Knox Criminal Cases will be **DENIED.**

### D. Remaining State Law Claims and Governmental Immunity

Defendant asks for dismissal of Plaintiff's claims based on state law due to governmental immunity. (Doc. 18 at 10.) Plaintiff states his claims for "malicious harassment, Tennessee Human Rights Act, fraudulent misrepresentation, negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress" are based solely on state law. (Doc. 25 at 6–7.) He also adds state law components to his claims for "malicious prosecution, false arrest, and false imprisonment." (*Id.*)

Tennessee law removes governmental immunity for injuries caused by government employees except if the injury arises out of:

> (1) The exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused;
> (2) False imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, abuse of process . . . infliction of mental anguish, invasion of right of privacy, or civil rights;
> . . .
> (5) The institution or prosecution of any judicial or administrative proceeding, even if malicious or without probable cause;
> (6) Misrepresentation by an employee whether or not such is negligent or intentional.

Tenn. Code Ann. § 29-20-205. The City retains immunity for any allegations within these categories. Therefore, the Court will **GRANT** Defendant's motion to dismiss Plaintiffs' claims for malicious harassment, fraudulent misrepresentation, intentional infliction of emotional distress, malicious prosecution, false arrest, and false imprisonment.

Finally, Defendant asks the Court to dismiss Plaintiff's negligence claim. (Doc. 18 at 10.) Plaintiff states his negligence claim is based on "booking and releasing Plaintiff from custody." (Doc. 25 at 6.) He cites paragraphs "13, 14, 24-29, 31, 32, 47, 52, 54, 58, 60, 70, 74, 75, 86, 91, 92, 115-120" as support for his claim. (*Id.*) As discussed above, Plaintiff's claims stemming from paragraphs 8-92 will be **DISMISSED**. Thus, Plaintiff's only remaining claim for negligence will be for any potential negligence stemming from the Knox Criminal Cases. The Court will examine whether "booking and releasing Plaintiff from custody" constituted a discretionary function such that Defendant is entitled to immunity under Tenn. Ann. § 29-20-205.

The Tennessee Supreme Court has adopted the "planning-operational test" which "distinguish[es] those [acts] performed at the 'planning' level from those performed at the 'operational level.'" *Bowers v. City of Chattanooga*, 826 S.W.2d 427, 430 (1992). "Under the planning-operational test, discretionary function immunity does not automatically attach to all acts involving choice or judgment . . . . Rather the underlying policy of governmental immunity is better served by examining (1) the decision-making process and (2) the propriety of judicial review of the resulting decision." *Id.* "If a particular course of conduct is determined after consideration or debate by an individual or group charged with the formulation of plans or policies, it strongly suggests the results of a planning decision." *Id.* "On the other hand, a decision resulting from a determination based on preexisting laws, regulations, policies, or standards, usually indicate that the maker is performing an operational act." *Id.* "These operational acts, which implement prior planning decisions, are not 'discretionary functions' within the meaning of the Tennessee Governmental Tort Liability Act." *Id.*

15

The parties have provided the Court with little information to apply the "planning-operational test" as articulated. Plaintiff alleges that Defendant acted negligently in booking and releasing him. Defendant generally argues governmental immunity. At this stage, the Court is required to draw reasonable inferences in favor of Plaintiff. In the absence of indication that the officers engaged in discussions surrounding booking and release policies, the Court finds that the officers followed a preestablished policy. Therefore, the officers were performing an operational act and Defendant is not entitled to immunity under the discretionary function exception.

Accordingly, Defendant's motion to dismiss Plaintiff's state law claims for malicious harassment, fraudulent misrepresentation, intentional infliction of emotional distress[7], malicious prosecution, false arrest, and false imprisonment will be **GRANTED**. Defendant's motion to dismiss Plaintiff's state law claims for negligent infliction of emotional distress and negligence is **DENIED**.

## IV. CONCLUSION

Defendant's motion to dismiss (Doc 17) will be **GRANTED IN PART**. Defendant's motion to dismiss Plaintiff's § 1983 and § 1985 claims listed in paragraphs 8 through 92 of the complaint will be **GRANTED** due to res judicata. Additionally, Defendant's motion to dismiss Plaintiff's claims stemming from the 2006 rape allegation and 2019 failure to prosecute will be **GRANTED** because these claims are barred by the statute of limitations. Defendant's motion is

---

[7] Defendant has raised state law claims for both intentional and negligent infliction of emotional distress. (Doc. 25 at 7.) The Tennessee Supreme Court has held that infliction of mental anguish may be used interchangeably with intentional infliction of emotional distress. *Sallee v. Barrett*, 171 S.W.3d 822, 831 (Tenn. 2005). Therefore, Plaintiff's claim for intentional infliction of emotional distress is barred under either phrasing. However, the Tennessee Supreme Court also held that Tenn. Code Ann. § 29-20-205's immunity provision does not extend to claims for negligent infliction of emotional distress. *Id.* Therefore, Defendant is not immune from Plaintiff's claim for negligent infliction of emotional distress.

also **GRANTED** as to Plaintiff's state law claims for malicious harassment, fraudulent misrepresentation, intentional infliction of emotional distress, malicious prosecution, false arrest, and false imprisonment because Defendant retains immunity from suit for these claims.

Defendant's motion to dismiss will be **DENIED** as to Plaintiff's § 1983 claim for the Knox Criminal Case where he was prosecuted for Aggravated Assault, Domestic Violence, and Unlawful Possession of a Weapon. Defendant's motion to dismiss will also be **DENIED** as to Plaintiff's claim for the Knox Criminal Case where he was charged with Introducing Contraband into a Penal Facility. Finally, Defendant's motion to dismiss Plaintiff's state law claims for negligent infliction of emotional distress and negligence will be **DENIED**.

**An appropriate order will enter.**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**